M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829
aberry@justice4you.com
gharoutunian@justice4you.com

[Additional Counsel Appear on Signature Page]

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYCE HOELTKE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>QUALITY FIRST HOME IMPROVEMENT, INC.,<br><br>Defendant. | NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## I. INTRODUCTION

Plaintiff Bryce Hoeltke ("Plaintiff" or "Mr. Hoeltke"), individually and on behalf of all others similarly situated, brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, against Defendant Quality First Home Improvement ("Quality First" or "Defendant").

## II. NATURE OF ACTION

1. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal

CLASS ACTION COMPLAINT - 1

Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (July 6, 2020).

2. Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA, alleging that Quality First violated the TCPA in two ways: (i) Quality First made telemarketing calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent; and (ii) Quality First called Plaintiff and proposed class members despite their "do not call" requests.

3. These calls were made in the absence of an adequate "do not call" policy or training, as evidenced by repeated calls to Plaintiff after specific requests that Defendant stop calling and by calls to individuals, including Plaintiff, who have taken the affirmative step of registering their number on the National Do Not Call Registry.

4. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of two proposed nationwide classes of other persons who received illegal telemarketing calls from, or on behalf of, Defendant.

5. A class action is the best means of obtaining redress for Defendant's wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

### III. JURISDICTION AND VENUE

6. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the TCPA. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

7. This Court has general personal jurisdiction over Quality First because it is registered to do business in this District.

8. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, as the telemarketing calls at issue were made from and into this District, and throughout the United States.

## IV. PARTIES

9. Plaintiff Bryce Hoeltke resides in California, as he did at all relevant times during the conduct alleged in this Complaint.

10. Defendant, Quality First Home Improvement, Inc. maintains its principal place of business at 6545 Sunrise Blvd., Suite 202, Citrus Heights, CA 95610.

## V. TCPA BACKGROUND

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

**A. The TCPA requires entities to have sufficient policies in place to prevent unwanted calls before making telemarketing calls.**

12. The TCPA specifically required the Federal Communication Commission ("FCC") to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

13. The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of . . . company-specific 'do not call systems . . .)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

CLASS ACTION COMPLAINT - 3

14. Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C. Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

15. These regulations are codified at 47 C.F.R. §§ 64.1200(d)(1)-(7).

16. Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do not call list, train personnel engaged in telemarketing on the existence and use of its internal do not call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. §§ 64.1200(d)(1, 2, 3, 6).

17. This includes the requirement that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity can be contacted." 47 C.F.R. § 64.1200(d)(4).

18. These policies and procedures prohibit a company from making telemarketing calls unless they have implemented these policies and procedures. 47 C.F.R. § 64.1200(d).

19. Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

**B.    The TCPA prohibits calls to numbers on the National Do Not Call Registry.**

20. The TCPA also prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

21. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

CLASS ACTION COMPLAINT - 4

22. A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

23. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**C.  Automated telemarketing is a growing problem.**

24. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman) (last visited September 15, 2021).

25. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-national-do-not-call-registry-data-book-dnc (last visited September 9, 2021).

26. For example, according to online robocall tracking service "YouMail," 4.9 billion robocalls were placed in March 2021 at a rate of 159.4 million per day. www.robocallindex.com (last visited September 15, 2021). In 2019, nearly 60 billion robocalls were made, and in 2020, over 45 billion robocalls were made. *See id.*

27. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, 232,000 complaints in 2018, 191,761 complaints in 2019, and 155,167 complaints in 2020. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data (last visited September 9, 2021).

CLASS ACTION COMPLAINT - 5

## VI. FACTUAL ALLEGATIONS

**A. Factual Allegations Regarding Defendant**

28. Defendant Quality First is a general contractor that serves California and Nevada.

29. One of Quality First's strategies for soliciting customers includes the use of telephone solicitation calls.

30. Recipients of these telephone solicitation calls, including Plaintiff, did not consent to receive such calls and also were called despite asking to no longer be called.

**B. Factual Allegations Regarding Plaintiff**

31. Plaintiff Bryce Hoeltke is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

32. Mr. Hoeltke's telephone number, (812) XXX-3132, is listed on the National Do Not Call Registry, and has been since December 2, 2004.

33. Mr. Hoeltke's telephone number, (812) XXX-3132, is a personal residential telephone number that is not used for business purposes.

34. In approximately January of 2019, a sales agent from Quality First approached Mr. Hoeltke at his home.

35. Mr. Hoeltke provided his telephone number, (812) XXX-3132, during this visit.

36. However, at the time he provided his telephone number, Mr. Hoeltke was not advised that there would be telemarketing calls to him as a result of providing that number.

37. The following day, Mr. Hoeltke contacted Quality First to inform the company that he was not interested in a quote regarding any home improvement projects.

38. Mr. Hoeltke did not enter into any kind of business relationship with Quality First, did not purchase any services from Quality First, and did not seek or approve any further contact from Quality First.

39. Shortly after the visit and his subsequent call in January 2019, Mr. Hoeltke received multiple telemarketing calls from Quality First to his telephone number, (812) XXX-3132.

40. These calls stated that Quality First was able to provide Mr. Hoeltke with bids on a number of different home improvement projects.

41. On at least five occasions, Mr. Hoeltke requested that the calls stop.

42. On or about, December 10, 2019, following a call from Quality First, Mr. Hoeltke, posted an online review on Quality First's Yelp page:

> They came to our door asking to replace anything on the house they saw broken. At first the wanted to replace our front door cause it looked old. I said I wanted to keep it as part of the originality of the mid-mod house. Then he asked about the windows.. which we had already just replaced brand new a few weeks prior. Then he asked if we had solar.. and we already have solar too. so on and so on...
>
> I made the mistake of giving him my phone number for the front door anyways because they were so pushy and now they will not stop calling my phone.. once or twice a day for the past YEAR. I've talked to representatives that call and offer their services and explain that I've already remodeled the entire house and they will not listen and keep calling back. It's so frustrating. I've reported them to every phone spamming outlet/app I can find. They also change their numbers so you can't simply block their calls. They will come back to haunt you. PLEASE STOP!

*See* https://www.yelp.com/biz/quality-first-home-improvement-citrus-heights-2?hrid=OArgrSCU5gizUPpoNc5kVA&utm_campaign=www_review_share_popup&utm_medium=copy_link&utm_source=(direct) (last visited September 9, 2021).

43. However, the calls from Quality First continued.

44. Mr. Hoeltke received at least five more calls from Quality First after his December 10, 2019, request for the calls to stop.

45. From approximately January 2019 through 2020, Mr. Hoeltke received calls from Quality First from the following telephone numbers:

CLASS ACTION COMPLAINT - 7

```
(916) 293 -7110
(916) 293 -7111
(916) 293 -7112
(916) 293 -7113
(916) 293 -7115
(916) 293 -7117
(916) 293 -7120
(916) 293 -7121
(916) 293 -7122
(916) 293 -7123
(916) 293 -7124
(916) 293 -7125
(916) 293 -7127
(916) 293 -7128
(916) 293 -7129
```

46. Mr. Hoeltke became so frustrated by the continued telemarketing calls from Quality First that he attempted to block each new telephone number from which Quality First called.

47. However, after Mr. Hoeltke blocked one telephone number, he would then get a telemarketing call from Quality First from the next sequentially ordered telephone number.

48. As such, Mr. Hoeltke knows he received at least 15 telemarketing calls from Quality First from 2019 through 2020.

49. The calls annoyed Mr. Hoeltke and invaded his privacy.

50. Quality First either does not have or does not utilize an internal do not call list, as Mr. Hoeltke continued to receive calls from Quality First despite his requests that they stop calling him.

**C.    Additional Telemarketing Calls**

51. Plaintiff is not alone. Other individuals have complained about receiving telephone solicitation calls from Defendant and have left accompanying reviews online.

52. For example, the Better Business Bureau has received the following complaints:

07/21/2021

CLASS ACTION COMPLAINT - 8

> We will never do business with this company. New sales people continue to call us. STOP HARASSING US and remove our phone number(s) from the call list.
>
> 02/05/2019
> Years ago this company comes to my door and asks if they can give me a free quote for replacing my windows, no pressure. I say yes, they have me make an appointment for someone to come out and measure my windows to give me a quote. She shows up an hour late, does the measurements, then tells me she can't give me a quote because she forgot her calculator, only has the one on her phone. She insists she can come back another day and finish the quote, I tell her not to, just to email me. She never emails me. Instead this company starts calling me incessantly to ask if I am still interested in having work done. I keep telling them I was never interested, just wanted the free no-pressure quote I was offered but now I don't even care anymore and to please just leave me alone. They decided not to leave me alone. The last time they called I told whoever I talked to to never call me again or I would be filing complaints with the Better Business Bureau and the FCC. Well today, 2/5/2019 at 2:00pm CST they just called me again. I have not even lived in Nevada in years, I no longer own the house there, I no longer live in the Western United States, yet they will not stop calling me.

*See* https://www.bbb.org/us/ca/citrus-heights/profile/roofing-contractors/quality-first-home-improvement-inc-1156-40001096/complaints (last visited September 9, 2021).

53. Plaintiff and other individuals who received these calls suffered an invasion of privacy and were harassed by the conduct of Defendant.

### VII.  CLASS ACTION ALLEGATIONS

54. As authorized by Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of two National Classes of all other persons or entities similarly situated throughout the United States.

55. The Classes of persons that Plaintiff proposes to represent are defined as follows (collectively referred to as the "Classes"):

> **National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant, (3) within a 12-month period, (4) who had previously asked for the calls to

CLASS ACTION COMPLAINT - 9

stop or had not had a business transaction with the Defendant for at least 18 months or who had not inquired about Defendant's services within the 3 months preceding the call (5) at any time in the period that begins four years before the date of filing this Complaint to trial.

**Internal DNC Class**: All persons in the United States to whom: (a) Defendant (or a third-party acting on behalf of Defendant) placed (2) two or more telemarketing calls in a 12-month period, (3) who were not current customers of Defendant at the time of the call, (4) who had previously asked for the calls to stop and (5) at any time in the period that begins four years before the date of filing this Complaint to trial.

56. Excluded from the Classes are counsel, Defendant, any entities in which Defendant has a controlling interest, Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

57. The Classes, as defined above, are identifiable through telephone records and telephone number databases.

58. The potential members of the Classes number at least in the thousands.

59. Individual joinder of these persons is impracticable.

60. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

61. Plaintiff is a member of each of the Classes and will fairly and adequately represent and protect the interests of the Classes as he has no interests that conflict with any of the Class members.

62. Plaintiff and all members of the Classes have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

63. This class action complaint seeks injunctive relief and money damages.

CLASS ACTION COMPLAINT - 10

64. There are numerous questions of law and fact common to Plaintiff and members of the Classes. These common questions of law and fact include, but are not limited to, the following:

    a. whether Defendant systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

    b. whether Defendant made calls to Plaintiff and members of the National Do Not Call Registry Class without first obtaining prior express written consent to make the calls;

    c. whether Defendant's calls to Plaintiff and members of the National Do Not Call Registry Class constitute a violation of the TCPA;

    d. whether Defendant maintained a written "do not call" policy;

    e. whether Defendant trained its employees or agents engaged in telemarketing on the existence and usage of any "do not call" policy;

    f. whether Defendant's conduct regarding its "do not call" policies constitute a violation of the TCPA; and

    g. whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

65. Plaintiff's claims are typical of the claims of the Classes.

66. Plaintiff's claims, like the claims of Classes, arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

67. Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the Classes, he will fairly and adequately protect the interests of the Classes, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

68. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient

CLASS ACTION COMPLAINT - 11

adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendant and/or its agents.

69. A class action is the superior method for the fair and efficient adjudication of this controversy. Classwide relief is essential to compel Defendant to comply with the TCPA. The interest of individual members of the Classes in individually controlling the prosecution of separate claims against Defendant are small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

70. Defendant has acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a classwide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

71. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

72. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency

CLASS ACTION COMPLAINT - 12

purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

73. Defendant's violations were negligent, willful, or knowing.

74. As a result of Defendant's, and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 and in damages for each and every call made and up to $1,500 in damages if the calls are found to be willful.

75. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Internal DNC Class)**

76. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

77. Defendant placed numerous calls for telemarketing purposes to Plaintiff and Internal DNC Class members' telephone numbers.

78. Defendant did so despite not having a written policy pertaining to "do not call" requests.

79. Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list.

80. Defendant did so despite not recording or honoring "do not call" requests.

81. Defendant placed two or more telephone calls to Plaintiff and Internal DNC Class members in a 12-month period.

82. Plaintiff and Internal DNC Class members are entitled to an award of up to $500 in statutory damages per telephone call pursuant to 47 U.S.C. § 227(c)(5).

83. Plaintiff and Internal DNC Class members are entitled to an award of treble damages in an amount up to $1,500 per telephone call, pursuant to 47 U.S.C. § 227(c)(5).

84. Plaintiff and the members of the Internal DNC Class are also entitled to and do seek injunctive relief requiring Defendant to enact a written policy pertaining to "do not call" requests, train its personnel on the existence and use of the internal "do not call list," and record and honor "do not call" requests.

## VIII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

D. A declaration that Defendant and/or its affiliates, agents, and/or other related entities' actions complained of herein violated the TCPA;

E. An order enjoining Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance.

F. An order enjoining Defendant to comply with the internal "do not call" policies of the TCPA;

G. An award to Plaintiff and the Classes of damages, as allowed by law; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

CLASS ACTION COMPLAINT - 14

## IX. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all claims of the Complaint so triable.

Date: October 1, 2021						Respectfully Submitted,

							By:	*/s/ M. Anderson Berry*
								M. ANDERSON BERRY

								M. Anderson Berry (SBN 262879)
								Gregory Haroutunian (SBN 330263)
								**CLAYEO C. ARNOLD,**
								**A PROFESSIONAL LAW CORP.**
								865 Howe Avenue
								Sacramento, CA 95825
								Telephone: (916) 777-7777
								Facsimile: (916) 924-1829
								aberry@justice4you.com
								gharoutunian@justice4you.com

								Samuel J. Strauss *(Pro Hac Vice Forthcoming)*
								Email: sam@turkestrauss.com
								Raina C. Borrelli *(Pro Hac Vice Forthcoming)*
								Email: raina@turkestrauss.com
								TURKE & STRAUSS LLP
								613 Williamson St., Suite 201
								Madison, WI 53703
								Telephone: (608) 237-1775
								Facsimile: (608) 509-4423

								Anthony Paronich *(Pro Hac Vice Forthcoming)*
								Email: anthony@paronichlaw.com
								PARONICH LAW, P.C.
								350 Lincoln Street, Suite 2400
								Hingham, MA 02043
								Telephone: (617) 485-0018
								Facsimile: (508) 318-8100

								*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT - 15